1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TERRY FORD,

        Plaintiff,

  v.

LEHMAN BROTHERS BANK, FSB, A
FEDERAL SAVINGS BANK; OLD
REPUBLIC TITLE, a California corporation;
MORTGAGE ELECTRONIC
REGISTRATION SYSTEM, INC., a
Delaware corporation; AURORA LOAN
SERVICES, LLC, a Delaware limited
liability company; CAL-WESTERN
RECONVEYANCE CORPORATION, a
California corporation; FIRST AMERICAN
TITLE INSURANCE COMPANY, a
California corporation; and DOES 1 TO 100,
inclusive,

        Defendants.

_____/

No. C 12-00842 CRB

**ORDER GRANTING MOTION TO
DISMISS**

      Plaintiff Terry Ford ("Plaintiff") is a borrower under a home loan for $549,000.00,
who defaulted on the loan and currently faces foreclosure.  She brings action against all
entities involved with the loan.  She alleges that Defendants executed various foreclosure
documents and other documents reassigning interests under the loan that misrepresented the
nature and authority of the Defendant companies and their respective signors.  She alleges
that these misrepresentations breached contractual obligations and violated California's
Unfair Competition Law ("UCL").  This, Plaintiff alleges, opens the door to equitable claims

United States District Court
For the Northern District of California

through which she challenges the Defendants' interests in the subject property and right to initiate foreclosure.  In addition to damages, Plaintiff seeks to enjoin a nonjudicial foreclosure sale, originally scheduled for December 6, 2011, and now postponed.  Nothing in the Complaint or subsequent filings suggests that the foreclosure sale has since then occurred, or that Defendants have brought an unlawful detainer action to evict Plaintiff.  <u>See, e.g.</u>, Notice of Removal (dkt. 1) Ex. 1 ¶ 30 (hereinafter "Complaint") ("[T]he acts of said Defendants were [intended] to <u>eventually</u> deprive the Plaintiff of the ownership, use and enjoyment of [her] home . . . .") (emphasis added).

The Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and VACATES the hearing currently set for Friday, June 22, 2012. The Court GRANTS Defendants' motion to dismiss as to all causes of action.  Plaintiff has twenty (20) days from the date of this order to file an amended complaint for those claims that the Court dismisses without prejudice.

## I.      BACKGROUND

Since 1998, Plaintiff Terry Ford has owned a parcel of real property located at 240 Cedar Lane, Pacifica, CA 94044.  Compl. ¶ 14.  On or about March 3, 2006 Plaintiff refinanced the subject property with Defendant Lehman Brothers Bank, FSB, a Federal Savings Bank ("Lehman"), and signed a Deed of Trust securing a loan in the principal amount of $549,000.00.  Compl. ¶ 15; Compl. Ex. 1.  The Deed of Trust named Plaintiff as the borrower, Lehman as the lender, Old Republic Title ("Old Republic") as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary of the security instrument and "nominee for Lender and Lender's successors and assigns."  Compl. ¶ 15; Compl. Ex. 1 ¶¶ B-E.  The Deed of Trust was subsequently recorded in the County of San Mateo on March 14, 2006.  Compl. Ex. 1.

The terms of the Deed of Trust pertinent to Plaintiff's complaint are as follows:

1.     "Borrower irrevocably grants and conveys in Trustee, in trust, with power of sale . . . ."  Compl. Ex. 1 at 3.
2.     "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and lender's successors and assigns) has the right: to exercise any or all

2

United States District Court
For the Northern District of California

of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." <u>Id.</u>

3.    "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . .  If the default is not cured on or before the date specified in the notice, Lender at its option may . . . invoke the power of sale and any other remedies permitted by Applicable Law . . . .  If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold."  Compl. Ex. 1 ¶ 22.

4.    "Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the country in which the Property is located . . . .  Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.  <u>This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.</u>"  Compl. Ex. 1 ¶ 24 (emphasis added).

On April 15, 2006 Lehman assigned, sold or transferred its servicing rights to the security instrument to Aurora Loan Services, LLC ("Aurora") through a Notice of Assignment, Sale or Transfer of Servicing Rights ("Notice of Assignment").  Compl. ¶ 17; Compl. Ex. 4.  On or about November 2, 2010, Plaintiff defaulted on the loan secured by the Deed of Trust.  Compl. ¶ 16.

The Complaint concentrates on several documents executed after Plaintiff's default occurred.  On July 13, 2011, MERS, in its capacity as "nominee for Lehman," signed a Corporate Assignment of Deed of Trust ("Corporate Assignment"), which appeared to assign and transfer all beneficial interest under the Deed of Trust to Aurora.  Compl. ¶ 18; Compl. Ex. 2.  The Corporate Assignment, recorded in San Mateo County on July 21, 2012, bore the signature of an individual named Stacy Sandoz, represented as Vice President of MERS.  Compl. ¶¶ 18, 19; Compl. Ex. 2.

On July 29, 2011, First American Title Insurance Company ("First American"), declaring itself the agent of Cal-Western Reconveyance Corporation ("Cal-Western"), executed a Notice of Default and Election to Sell Under Deed of Trust ("Notice of Default"), which was then recorded on August 1, 2011, thereby initiating foreclosure proceedings.  Compl. ¶ 21; Compl. Ex. 5.  The signature of an individual named Derrick Sue appears on

3

United States District Court
For the Northern District of California

1    the Notice of Default, although the document does not indicate his title or relationship to

2    First American.  Compl. ¶ 22; Compl. Ex. 5.  The Notice of Default notified Plaintiff that she

3    was $24,854.45 in arrears.  Mot. at 2; Compl. Ex. 5.

4            On August 23, 2011, Aurora, identifying itself as the present beneficiary under the

5    Deed of Trust, executed a Substitution of Trustee naming Cal-Western as trustee and later

6    recorded it in San Mateo County on September 2, 2011.  Compl. ¶ 25; Compl. Ex. 6.  The

7    document bears the signature of an individual named Michelle Rice, who is designated as

8    Aurora's Vice President.  Compl. ¶ 26; Compl. Ex. 6.  There is an accompanying Affidavit of

9    Mailing Substitute Trustee ("Affidavit"), signed by an individual named Megan Cooper on

10   behalf of Cal-Western; it does not indicate her title or relationship to Cal-Western.  Compl. ¶

11   27; Compl. Ex. 6.

12           In the three months following the filing of the Notice of Default, Plaintiff failed to

13   cure the default, so Cal-Western executed a Notice of Trustee's Sale on November 2, 2011,

14   announcing that a nonjudicial foreclosure sale would be held on December 6, 2011.  Compl.

15   ¶ 28; Request for Judicial Notice (dkt. 4) Ex. 5 (hereinafter "RJN").  Defendants recorded the

16   Notice of Trustee's Sale on November 15, 2011.  Mot. at 2.[1]  On December 5, 2011, Aurora

17   recorded a Corporate Assignment of Deed Trust ("Corporate Assignment 2"), which

18   assigned and transferred all beneficial interest under the Deed of Trust to Federal National

19   Mortgage Association.  RJN Ex. 7.

20           Plaintiff filed a Complaint on November 23, 2011, in the Superior Court of California,

21   County of San Mateo.  The Complaint asserts five causes of action: (1) breach of contract,

22   (2) violations of Business & Professions Code § 17200, California's Unfair Competition

23   _____

24           [1] An unsigned, unrecorded, un-notarized version of this document was attached to the
     Complaint.  Compl. Ex. 7.  Defendants request that the Court take judicial notice of the version of this
25   document that exists in public record, as well as a second Corporate Assignment of Deed of Trust
     ("Corporate Assignment 2") recorded on December 5, 2011, and a Grant Deed recorded on December
26   1, 2011.  RJN Exs. 5-7.  The Court GRANTS Defendants' request as to these documents, because
     district courts are permitted to take judicial notice of matters of public record, as the facts therein can
27   be "accurately and readily determined from sources whose accuracy cannot be reasonably questioned."
     Fed. R. Evid. 201(b)(2); Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).  In their
28   Request for Judicial Notice, Defendants also attempt to re-introduce other documents that were already
     attached to the Complaint.  See RJN Exs. 1-4.  The Court DENIES Defendants' request as to these
     documents because it need not take judicial notice of documents that are already on the record.

Law, (3) an action to quiet title on the subject property, (4) an action for an accounting, and (5) declaratory relief.[2]   Defendants removed the case to federal court on February 21, 2012, pursuant to 28 U.S.C. §1332(a).   Notice of Removal (dkt. 1).   Currently pending before the court is a motion to dismiss filed by Lehman, MERS, and Aurora.[3]   Mot. (dkt. 4).

## II.   LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a cause of action which fails to state a claim upon which relief can be granted.   Fed. R. Civ. P. 12(b)(6).   On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.   <u>Wyler-Summit P'ship v. Turner Broad. Sys., Inc.</u>, 135 F.3d 658, 661 (9th Cir. 1998).   To survive a Rule 12(b)(6) motion to dismiss, the complaint must state a claim to relief that is "plausible on its face."   <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009).   A claim has "facial plausibility" when the pleaded factual allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   <u>Id.</u>   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not suffice.   <u>Id.</u>   Dismissal is proper where a complaint lacks a "cognizable legal theory" or sufficient facts to support one.   <u>Hamilton v. Bank of Blue Valley</u>, 746 F. Supp. 2d 1160, 1166 (E.D. Cal. 2010).

In the context of fraud claims, Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud . . . .   Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."   To comply with Rule 9(b), a plaintiff must plead

United States District Court
For the Northern District of California

---

[2] Under the "Jurisdiction and Venue" heading of the Complaint, Plaintiff asserts a claim against Defendants for a violation of California Civil Code Section 2932.5, which concerns the power of sale under a mortgage.   It is the only mention of this statute in any of Plaintiff's filings.   The Court construes the absence of a formally pled cause of action under this statute as abandonment.   Additionally, such a claim would likely fail, as California courts have generally held that Section 2932.5 applies only to mortgages, and not loans secured by a deed of trust.   <u>See, e.g.</u>, <u>Calvo v. HSBC Bank USA, N.A.</u>, 199 Cal. App. 4th 118, 120 (2011).

[3] Cal-Western, First American, Old Republic Title, and DOES 1-100 are other named defendants, but they are not party to the Motion to Dismiss.   Defendants Cal-Western and First American filed Declarations of Non-Monetary Status with the Notice of Removal, indicating that they are named in the action solely in their capacity as trustee and agree to be bound by any non-monetary judgments.   Notice of Removal Exs. 4, 5.   Defendant Old Republic filed a Disclaimer of Interest, which purports to have the same effect.   Notice of Removal, Ex. 3.   Defendants DOES 1 to 100 represent all defendants unknown as a result of fraudulent use of fictitious names.   Compl. ¶ 13.

United States District Court
For the Northern District of California

1  "with particularity" the time and place of the fraud, the statements made and by whom, an

2  explanation of why or how such statements were false or misleading, and the role of each

3  defendant in the alleged fraud.  <u>KEMA, Inc. v. Koperwhats</u>, No. 09-1587,  2010 WL

4  3464737, at *3 (N.D. Cal. Sept. 1, 2010) (citations omitted).

5      A complaint should not be dismissed without leave to amend unless it is clear that the

6  claims could not be saved by amendment.  <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 760 (9th

7  Cir. 2007).  In determining whether amendment would be futile, the court examines whether

8  the complaint could be amended "without contradicting any of the allegations of [the]

9  original complaint."  <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990).

10  **III.  DISCUSSION**

11      Plaintiff alleges, in support of her five causes of action, that some documents in

12  connection with the Deed of Trust are invalid due to either fraud or lack of authority of

13  signing parties.

14      Specifically, Plaintiff alleges that Stacy Sandoz was not a Vice President of MERS as

15  the Corporate Assignment would suggest, but rather "was in fact not employed at all by

16  MERS nor was she authorized by MERS to take such actions due to the fact that the

17  document was not properly notarized . . . no such person existed or signed said document or

18  notarial record."  Compl. ¶¶ 19, 38; Compl. Ex. 2.  Plaintiff brings the same allegations

19  against Michele Rice, the signatory of the Substitution of Trustee and purported Vice

20  President of Aurora, and Megan Cooper, who represented Cal-Western on the accompanying

21  Affidavit of Mailing Substitute Trustee.  Compl. ¶¶ 26, 27; Compl. Ex. 6.  Plaintiff similarly

22  contends that Derrick Sue, whose signature appears on the Notice of Default and Election to

23  Sell Under Deed of Trust, is fictitious or else not employed by First American.  Compl. ¶ 22;

24  Compl. Ex. 5.  Furthermore, Plaintiff alleges that MERS did not have an agreement with

25  Lehman to operate as its nominee and that no agency relationship existed between Cal-

26  Western and First American.  Compl. ¶¶ 20, 22, 39, 40.[4]

27  _____

28      [4] Plaintiff's allegation denying an agreement between MERS and Lehman is undermined by the
   Deed of Trust itself, which explicitly states that MERS is Lehman's nominee.  Compl. Ex. 1 ¶ E.

United States District Court

For the Northern District of California

1    Defendants request that the court grant their motion to dismiss all claims in the

2   Complaint on the ground that Plaintiff has failed to tender payment to cure the default on her

3   loan.  Mot. at 4.  Defendants pose failure to tender as a threshold issue.  They cite <u>Arnolds</u>

4   and <u>Karlsen</u>, which hold that the tender rule applies to any cause of action "implicitly

5   integrated" with an irregular, and thus, voidable foreclosure sale.  <u>Arnolds Mgmt. Corp. v.</u>

6   <u>Eischen</u>, 158 Cal. App. 3d 575, 578-79 (1984); <u>Karlsen v. Am. Sav. & Loan Assn.</u>, 15 Cal.

7   App. 3d 112, 121 (1971).  While Defendant is correct in asserting that failure to tender the

8   amounts required to cure the loan's default bars some forms of relief (<u>see</u> discussion <u>infra</u> re

9   Plaintiff's "Quiet Title" cause of action), <u>Arnolds</u> and <u>Karlsen</u> may not apply here when no

10   foreclosure sale has yet occurred.  Indeed, most cases citing that particular holding involve

11   claims to set aside a foreclosure sale, not prevent one, as in the case at hand.  <u>See, e.g.</u>,

12   <u>Hamilton</u>, 746 F. Supp. 2d at 1170.  Recent opinions in this court alone reflect a split in

13   authority as to whether the tender rule should apply in situations where a sale is pending.

14   <u>Compare</u> <u>Hague v. Wells Fargo Bank, N.A.</u>, No. 11-2366, 2011 WL 6055759, at *5 (N.D.

15   Cal. Dec. 6, 2011) ("[T]ender is not required in this [lending fraud] case, as the foreclosure at

16   issue has not yet occurred . . . ."), <u>with</u> <u>Alicea v. GE Money Bank</u>, No. 09-0091, 2009 WL

17   2136969, at *3 (N.D. Cal. July 16, 2009) (applying the tender rule to deny all claims

18   premised on wrongful foreclosure aimed at preventing the foreclosure sale).  Given the

19   inconsistencies in applying the tender rule to pre-foreclosure sale cases in the past, and the

20   harsh effects of doing so in the present case, the Court limits its application of the tender

21   requirement so as not to automatically bar all of Plaintiff's claims.

22    Next, Defendants argue that each of the Plaintiff's five causes of actions can be

23   dismissed for failure to state a claim.  This Court agrees.

24    **A.    First Cause of Action: Breach of Contract**

25    A complaint for breach of contract must plead: (1) the existence of a contract, (2) a

26   breach of the contract by defendant, (3) performance or excuse of non-performance on behalf

27   of plaintiff, and (4) damages suffered by plaintiff as a result of defendant's breach.

28   <u>McDonald v. John P. Scripps Newspaper</u>, 210 Cal. App. 3d 100, 104 (1989).  The Complaint

**United States District Court**
For the Northern District of California

1    does not allege all requisite elements.  Thus, Plaintiff fails to state a claim for breach of

2    contract.

3                    **1.      Breach**

4         Plaintiff anchors her breach of contract claim in her understanding that the security

5    instrument (1) vested the power of sale only in the trustee and (2) permits only the Lender to

6    reassign or substitute that trustee.  Compl. ¶ 24.  These premises give rise to two alleged

7    instances of breach.  First, because the note designated MERS as merely Lehman's

8    "nominee," and not an agent, MERS did not assume Lehman's substitution right.  Thus,

9    Lehman's exclusive power to substitute a trustee did not transfer to Aurora when Lehman

10   executed the Corporate Assignment on July 13, 2011.  Compl. ¶ 24.  Therefore, Plaintiff

11   alleges that Aurora lacked the authority to substitute Cal-Western as the new trustee.

12   Consequently, Aurora's attempt to do so violated paragraph 24 of the Deed of Trust, which

13   limits the manner in which a trustee may be substituted.  Compl. ¶¶ 24, 31.  Second, because

14   Cal-Western never contractually assumed the role of trustee, it lacked the power of sale.

15   Compl. ¶ 24.  Without legal authority to initiate foreclosure, Plaintiff contends, Cal-Western

16   and First American, as its agent, breached the terms of the Deed of Trust imposing a specific

17   foreclosure procedure.  Compl. ¶ 24; Compl. Ex. 1 at 3.[5]

18        As Plaintiff points out in her Opposition, paragraph 24 of the Deed of Trust sets forth

19   a procedure for substituting a trustee, which "govern[s] to the exclusion of all other

20   provisions."  Compl. Ex. 1 ¶ 24.  If this procedure is indeed mandatory, then a deviation from

21   _____

22        [5] The Complaint alludes to "many breaches of the contracts referenced herein," and asserts its
     claim generally against all named defendants. Compl. ¶¶ 32, 33. However, only the two breaches
23   described above are alleged with any degree of specificity. To the extent that the Complaint alleges any
     additional breaches, the Court GRANTS Defendants' motion to dismiss with leave to amend.

24        Additionally, Plaintiff's Opposition introduces a slew of new allegations sounding in breach of
     contract, which the Court disregards in this motion.  See Schneider v. Cal. Dep't of Corr., 151 F.3d
25   1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may
     not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to
26   a defendant's motion to dismiss.").  One allegation, based in part on reports of Wall Street's "rampant,
     widespread, and irresponsible" securitization practices, attempts to extinguish the subject loan by
27   voiding the original Deed of Trust. Opp'n at 8-10, 20.  Plaintiff argues that the Defendants breached
     their own internal Pooling and Servicing Agreements in executing the Deed of Trust and thus never
28   secured rights, title, or interest in the subject property.  Opp'n at 12, 20.  This argument is highly
     conclusory, necessarily conflicts with the breach of contract claim of the original Complaint, and cannot
     be considered upon a motion to dismiss as it was first introduced in Plaintiff's Opposition.

it may form the basis for a breach of contract claim.  However, other provisions complicate the picture and may cut against Plaintiff's allegations.  For example, the terms on page three of the Deed of Trust explicitly give MERS the right to foreclose and sell, as well as take any action required of the Lender, which may very well include substitutions and assignments. Additionally, other cases involving similar, if not identical, deeds of trust have held that MERS, as beneficiary and nominee, had the power to make assignments and substitutions under California's statutory foreclosure scheme.  See, e.g., Lane v. Vitek Real Estate Indus. Group, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010); Ramirez v. SCME Mortg. Bankers, Inc., No. 09-1931, 2010 WL 2839476, at *3 (S.D. Cal. July 19, 2010).  Thus, arguing that Aurora, the entity that succeeded MERS in all its beneficial interests under the Deed of Trust, did not have the power to make assignments and substitutions may put Plaintiff in a precarious position.  This implicates Plaintiff's second breach of contract theory, questioning Cal-Western's authority to initiate foreclosure.  To the extent that Plaintiff's arguments have been understood and summarized correctly, some doubt remains as to whether the Complaint adequately alleges a plausible breach of the Deed of Trust.

Assuming, arguendo, that Plaintiff has sufficiently alleged breach, the cause of action nevertheless fails because the Complaint does not sufficiently allege other requisite elements of a breach of contract claim.

### 2.   Damages

Plaintiff alleges that "as an actual and proximate result of the conduct of the alleged breaches of written contract, and because of the breaches of said written contract [sic] have continued for the past year, the named Defendants and each of them, continue to be responsible for the many breaches and damages caused to the Plaintiff herein. . . .  Plaintiff is therefore seeking damages for the many breaches of the contracts referenced herein and as set forth in the prayer in this Complaint."  Compl. ¶¶ 32, 33.

A complaint must allege actual damages that were proximately caused by the defendant's breach.  Capell Assocs, Inc. v. Cent. Valley Sec. Co., 260 Cal. App. 2d 773, 779 (1968) ("[C]ompensatory damages cannot be recovered unless there is a causal connection

between the act or omission complained of and the injury sustained.").

In <u>Reyes</u>, this Court found that plaintiff borrowers who claimed only that they had been "harmed as a result of the breach" had insufficiently alleged actual damages and therefore failed to state a claim for breach of contract. <u>Reyes v. Wells Fargo Bank, N.A.</u>, No. 10-01667, 2011 WL 30759, at *4, 10 (N.D. Cal. Jan 3, 2011). Another federal district court held that plaintiffs who were "delinquent on their mortgage and continue[d] to live rent-free on the property" had suffered no damages. <u>Hamilton</u>, 746 F. Supp. 2d at 1179.

Plaintiff's Complaint lacks any factual allegations that might distinguish the present case from <u>Reyes</u> and <u>Hamilton</u>. Just as Plaintiff vaguely alleges Defendants' "many breaches," Plaintiff is equally vague in describing the "many damages" she sustained as a result of those breaches. Plaintiff has not properly stated a claim for relief under this cause of action because the Complaint produces no more than a "threadbare recital" of this element. <u>Iqbal</u>, 556 U.S. at 663. Should the Plaintiff choose to amend, she must additionally plead causation.

### 3.    Performance

Plaintiff also fails to allege her own performance or excuse for non-performance under the contract. Here the issue of Plaintiff's failure to tender an amount sufficient to cure the default materializes again, not under the laws of equity, but rather as a means to satisfy one of the requisite elements for a breach of contract claim.

Defendants argue that Plaintiff's default on the loan, uncorrected since November of 2010, precludes recovery under a breach of contract claim because it demonstrates that Plaintiff has not satisfied her own obligations under the Deed of Trust. Mot. at 8. The Court agrees.

In general, a "plaintiff who has not performed under a contract is foreclosed from suing another for breach of that agreement." <u>Davoodi v. Imani</u>, No. 11-0260, 2011 WL 577414, at *4 (N.D. Cal. Feb. 9, 2011); <u>Durell v. Sharp Healthcare</u>, 183 Cal. App. 4th 1350, 1367 (2010) (quoting <u>Lewis Publ'g Co. v. Henderson</u>, 103 Cal. App. 425, 429 (1930)) ("It is elementary that one party to a contract cannot compel another to perform while he himself is

United States District Court
For the Northern District of California

1   in default.").  Performance may be satisfied by "allegations in general terms," but a plaintiff

2   must plead excuses for non-performance with specificity.  <u>Careau & Co. v. Sec. Pac. Bus.</u>

3   <u>Credit, Inc.</u> 222 Cal. App. 3d 1371, 1389 (1990).

4       In similar foreclosure cases, courts have dismissed breach of contract claims for

5   failure to adequately allege this performance.  <u>See</u> <u>Gonzalez v. First Franklin Loan Servs.</u>,

6   No. 09-0941, 2010 WL 144862, at *16 (E.D. Cal. Jan. 11, 2010) (holding that a borrower

7   alleging breach of a loan agreement had failed to state a claim because the complaint lacked

8   allegations indicating performance, or else an excuse for non-performance, of her contractual

9   duties under the loan agreement).

10      Plaintiff admits in her Complaint that she entered into a loan agreement on March 3,

11  2006, and defaulted on that loan on November 2, 2010.  She does not allege any tender of

12  payment since then.  Nor is there any indication that she has offered to tender payment that

13  could reinstate the loan or otherwise fulfill her obligations.  She therefore fails to allege

14  performance.

15      Similarly, Plaintiff does not offer any factual allegations in her Complaint that might

16  excuse her failure to perform, let alone with any degree of specificity.  Plaintiff provides

17  some explanation in her Opposition, but none of her arguments purport to excuse the initial

18  default, which constituted a breach of Plaintiff's primary debt obligations under the loan.[6]  In

19  addition, the Court cannot consider these explanations as they did not appear in the original

20  Complaint.  Thus, they cannot protect Plaintiff from dismissal.

21      Plaintiff cannot sustain her cause of action because she neither alleges performance

22  under the contract nor an excuse for nonperformance of the contractual terms.

23      Accordingly, the Court GRANTS the Defendants' Motion to Dismiss Plaintiff's

24

25      [6] In her Opposition, Plaintiff challenges the validity of the subject loans secured by the Deed of Trust, offering an alternative reason why she should not be obligated to tender.  Opp'n at 8, 10-12.  Not only does this allegation conflict with the breach of contract claim above, which depends on the validity of the Deed of Trust and the terms therein, it also merits no consideration upon a Motion to Dismiss because Plaintiff failed to assert it in the original Complaint.  Other alleged excuses appear in the Opposition, such as attempts to re-negotiate or modify the loan and a representation by the "Lender/Servicer" that she should "default on the mortgage in order to get a loan modification."  Opp'n at 13.  Again, these explanations cannot protect Plaintiff from dismissal because none appear in the Complaint.

1    breach of contract claim without prejudice, so she may cure the defects identified herein.

2              **B.        Second Cause of Action: Violation of § 17200**

3              Section 17200, California's so-called Unfair Competition Law ("UCL") prohibits

4    "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §

5    17200.  Plaintiff alleges that individuals whose names appeared on various documents in

6    connection with the Deed of Trust were either fictitious or lacked the authority to act on

7    behalf of the companies they purported to represent, either as employees or agents.  Compl.

8    ¶¶ 19, 22, 26-27.  Plaintiff additionally challenges the validity of the notarization of the

9    Corporate Assignment, Substitution of Trustee, and Affidavit.  Compl. ¶¶ 19, 26-27.  She

10   argues that by utilizing unauthorized agents, Defendants engaged in "unfair, deceptive,

11   untrue acts" and therefore violated Section 17200.  Compl. ¶ 37.

12             Defendants make several arguments in response.  Defendants insist that individuals

13   who signed the contested documents did not misstate their authority, and Plaintiff has no

14   personal knowledge upon which to base her allegations.  Mot. at 1, 11-15.  In addition,

15   Defendants contend that as a non-party to the agreements that vested the named individuals

16   with the authority to execute those documents, Plaintiff is not entitled to challenge them.

17   Lastly, Defendants argue that even if Plaintiff could bring such an action, the Complaint does

18   not plead the claim with the specificity required under Section 17200.  Id. at 9.

19             Defendants are correct in concluding that the Complaint does not sufficiently address

20   the specific elements required for a UCL claim.  Defendants have not, however, identified a

21   more fundamental problem with the Complaint: Plaintiff's allegations cannot confer standing

22   under the UCL.  Both defects, discussed in detail below, direct this Court to GRANT

23   Defendants' Motion to Dismiss with leave to amend.

24             **1.        Standing**

25             California's Proposition 64, enacted in 2004 as an amendment to the UCL and

26   codified in California Business & Professions Code Section 17204, created stricter eligibility

27   requirements for private individuals pursuing Section 17200 claims.  In re Tobacco II Cases,

28   46 Cal. 4th 298, 316 (2009).  Plaintiffs must now demonstrate that they "suffered injury in

**United States District Court**
For the Northern District of California

12

United States District Court
For the Northern District of California

1    fact and [have] lost money or property as a result of the unfair competition." Cal. Bus. &

2    Prof. Code § 17204; Degelman v. Advanced Med. Optics, Inc., 659 F.3d 835, 839 (9th Cir.

3    2011).  An absence of facts describing the money or property allegedly lost is fatal to a

4    plaintiff's UCL claim.  Saldate v. Wilshire Credit Corp., 711 F. Supp. 2d 1126, 1137 (E.D.

5    Cal. 2010).

6         In Jensen v. Quality Loan Serv. Corp., a federal district court dismissed the plaintiff

7    borrower's UCL claim with leave to amend because allegations that he "incurred out of

8    pocket monetary damages . . . and continues to incur monetary damages" were too

9    conclusory as to the lost money element.  702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010).  As

10   to lost property, the court held that because the prospect of losing property is substantially

11   different from having already lost property, allegations that plaintiff would lose his personal

12   residence if a nonjudicial foreclosure sale occurred were insufficient to plead loss of

13   property.  Id.  This Court has further held that even if a foreclosure sale has already occurred,

14   thus establishing loss of property, a plaintiff nevertheless lacks standing if he cannot causally

15   link the defendant's conduct to that loss.  See DeLeon v. Wells Fargo Bank, N.A., No. 10-

16   1390, 2011 WL 311376, at *9 (N.D. Cal. Jan. 28 2011) (holding that false statements

17   regarding postponement of a foreclosure sale had not plausibly caused a plaintiff borrower

18   lose her home because "in order to cure the default and reinstate the loan, plaintiffs would

19   have been required to pay [an amount that] they have not alleged they could have done").

20        In the instant case, Plaintiff falls even shorter of the eligibility requirements than the

21   plaintiff in Jensen.  In fact, she fails to allege any injury in connection with the alleged

22   Section 17200 violation at all, let alone facts describing loss of money or property.  As in

23   Jensen, the imminent loss of property in a future foreclosure sale cannot help Plaintiff meet

24   her burden of demonstrating standing.  Jensen, 702 F. Supp. 2d at 1189.

25        Lack of standing under the UCL alone warrants dismissal in this case, but Plaintiff's

26   Complaint also fails to sufficiently allege the other elements of a UCL claim.

27

28

**2.     Elements**

Plaintiff also fails to plead sufficient facts to support a UCL claim for "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Because the framers of the UCL expressed the three categories of unfair competition in the disjunctive, "each prong of the UCL is a separate and distinct theory of liability," each offering "an independent basis for relief."  Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir. 2009).  Furthermore, a claim under Section 17200 is "derivative of some other illegal conduct or fraud committed by a defendant, and [a] plaintiff must state with reasonable particularity the facts supporting the statutory elements of the violation."  See Benham v. Aurora Loan Servs., No. 09-2059, 2009 WL 2880232, at *4 (N.D. Cal. Sept. 1, 2009).  "A complaint based on an unfair business practice may be predicated on a single act; the statute does not require a pattern of unlawful conduct."  Brewer v. Indymac Bank, 609 F. Supp. 2d 1104, 1122 (E.D. Cal. 2009).

There is little question that the execution of documents in connection with a Deed of Trust constitutes a "business act or practice."  As for the nature of the conduct alleged, while the Complaint alludes to all three prongs of this statute generally, Plaintiff does not specify the theory on which she bases her claim, nor does she address the elements of any one of these theories.  Compl. ¶ 41 ("[T]he instances mentioned in paragraphs 32-26 [sic] above are unfair, deceptive, untrue acts, which are prohibited by California Business And Professions Code §17200.").  Other courts have dismissed UCL claims on these grounds.  See, e.g., Jensen, 702 F. Supp. 2d at 1200 (dismissing plaintiff's UCL claim because his UCL allegations "do not specify the basis for his claim, i.e., whether it is based on unlawful, unfair, or fraudulent practice").  However, in an effort to construe the factual allegations in a light most favorable to Plaintiff, this Court  will consider the adequacy of the Complaint under each prong separately.

**a.     "Unlawful" Prong**

The "unlawful" prong of the UCL requires a plaintiff to demonstrate that the defendant's conduct violated some other law.  Chabner v. United of Omaha Life Ins. Co.,

14

United States District Court
For the Northern District of California

225 F.3d 1042, 1048 (9th Cir. 2000).  In effect, Section 17200 "borrows" violations of federal, state, or local law and makes them independently actionable.  Id.  To state a claim for relief under this theory, a plaintiff must "state, with reasonable particularity, the facts supporting the statutory elements of the violation."  Jensen, 702 F. Supp. 2d at 1189.

Aside from the cause of action for breach of contract, Plaintiff alleges no violation of federal, state, or local law in her Complaint that could be actionable under Section 17200. Courts consistently conclude that a breach of contract is not itself an unlawful act for the purposes of the UCL.  Puentes v. Wells Fargo Home Mortgage, Inc., 160 Cal. App. 4th 638, 645 (2008); Gibson v. World Sav. & Loan Ass'n, 103 Cal. App. 4th 1291, 1302 (2002) ("Contractual duties are voluntarily undertaken by the parties to the contract, not imposed by state or federal law.").  Only when the act constituting breach is unfair, unlawful, or fraudulent for some additional reason may that act also violate the UCL.  Smith v. Wells Fargo Home Mortgage, Inc., 135 Cal. App. 4th 1463, 1483 (2005).  Here, Plaintiff fails to demonstrate how the facts alleged to support breach are, apart from the breach, wrongful.

Contractual considerations aside, to the extent that Plaintiff bases a theory of "unlawful" conduct on defendant Aurora's lack of authority to substitute a trustee or Cal-Western's lack of authority to initiate foreclosure proceedings, her cause of action fails. California Civil Code Sections 2924 through 2924k, "[t]he comprehensive statutory framework established to govern nonjudicial foreclosure sales" are intended to be "exhaustive."  Moeller v. Lien, 25 Cal. App. 4th 822, 834 (1994).  Section 2924(a)(1) provides that a "trustee, mortgagee, or beneficiary, or any of their authorized agents may initiate the foreclosure process."  Gomes v. Countrywide Home Loans, Inc., 192 Cal. App. 4th 1149, 1155 (2011).  Thus, even a breach of contract theory invalidating Cal-Western's appointment as trustee does not also bar Cal-Western from initiating foreclosure as an agent of the trustee.  Only the alleged breach, and not a violation of California law, could potentially render the Defendants' conduct illegal.

Furthermore, California Civil Code Section 2934a(a)(1)(A) provides that "a trustee under a trust deed . . . may be substituted by . . . all of the beneficiaries under the trust deed,

15

**United States District Court**
For the Northern District of California

1    or their successors in interest."  Again, while Aurora's attempt to appoint Cal-Western as the

2    new trustee may have breached the terms of the Deed of Trust, it did comply with California

3    law.[7]

4         Thus, to the extent Plaintiff predicates her UCL claim on a violation of another law,

5    this cause of action fails.

6                                    **b.    "Unfair" Prong**

7         The California Supreme Court has yet to establish a definitive test that may be used in

8    consumer cases to determine whether a particular business act or practice is "unfair" for the

9    purposes of the UCL.  Drum v. San Fernando Valley Bar Ass'n, 182 Cal. App. 4th 247, 253-

10   54 (2010) (citing Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th

11   163, 187 n.12 (1999)).  As a result, three tests have developed among state and federal

12   courts.  See Vogan v. Wells Fargo Bank, N.A., No. 11-02098, 2011 WL 5826016, at *6

13   (E.D. Cal. Nov. 17, 2011); Davis v. Ford Motor Credit Co., 179 Cal. App. 4th 581, 593-97

14   (2009) (detailing the split in authority in handling consumer UCL cases).

15        One test, which has garnered the most attention from the Ninth Circuit, limits unfair

16   conduct to that which "offends an established public policy" and is "tethered to specific

17   constitutional, statutory, or regulatory provisions."  Davis, 179 Cal. App. 4th at 595; Lozano

18   v. AT&T Wireless Servs., 504 F.3d 718, 736 (9th Cir. 2007) (holding that unfairness must be

19   tied to a "legislatively declared" policy).  The second test contemplates whether the alleged

20   business practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious

21   to consumers," and requires the court to "weigh the utility of the defendant's conduct against

22   the gravity of the harm to the alleged victim."  Davis, 179 Cal. App. 4th at 594-95;

23   McDonald, 543 F.3d at 506;  Progressive West Ins. Co. v. Yolo County Sup. Ct., 135 Cal.

24   App. 4th 263, 285-87 (2005).  The third test, which borrows the definition of "unfair" from

25

26         [7] In her Opposition, Plaintiff asserts that the factual allegations of the Complaint do, in fact, state
27   a claim under Cal. Penal Code § 115.5(a), which criminalizes fraud related to filing or notarizing
     documents that affect title to, interests in, or encumbrances on real property.  Cal. Penal Code §
28   115.5(a); Opp'n at 16.  Defendants argue that even if factual allegations support the existence of such
     a violation, the Complaint must identify the violated statute itself, and failure to do so should be grounds
     for dismissal.  This Court agrees.

**United States District Court**
For the Northern District of California

1   the Federal Trade Commission Act, requires that "(1) the consumer injury must be

2   substantial; (2) the injury must not be outweighed by any countervailing benefits to

3   consumers or competition; and (3) it must be an injury that consumers themselves could not

4   reasonably have avoided."  <u>Davis</u>, 179 Cal. App. 4th at 597.

5          Plaintiff's complaint does not, in any meaningful way, address the considerations

6   presented by these tests.  She fails to link her claim to a "legislatively declared" policy as

7   required under the first test.  Under the second and third tests, the Complaint fails because

8   Plaintiff does not allege that Defendants' conduct caused any injury, to the Plaintiff or others.

9   Even under the second test, which a California Court of Appeal admits is "fact intensive and

10   not conducive to resolution at the demurrer stage," Plaintiff's claim under this theory cannot

11   proceed without allegations of its fundamental requirements.  <u>Progressive West</u>, 135 Cal.

12   App. 4th at 287.

13          Thus, to the extent that Plaintiff attempts to state a claim under the "unfair" prong of

14   the UCL, this cause of action fails.

15          **c.**    **"Fraudulent" Prong**

16          "Fraudulent acts are ones where members of the public are likely to be deceived."

17   <u>Sybersound Records, Inc. v. UAV Corp</u>, 517 F.3d 1137, 1151-52 (9th Cir. 2008).  In

18   response to the new eligibility requirements for private actions under Section 17200 enacted

19   through Proposition 64, a UCL claim under the "fraudulent prong" requires a plaintiff to

20   have "actually relied" on the alleged misrepresentation to his detriment.  <u>In re Tobacco II</u>

21   <u>Cases</u>, 46 Cal. 4th at 326 (2009).

22          Under the Federal Rules of Civil Procedure 9(b), the "circumstances constituting

23   fraud" or any other claim that "sounds in fraud" must be stated "with particularity."  Fed. R.

24   Civ. P. 9(b); <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1103-04 (9th Cir. 2003). The

25   Ninth Circuit has explained that this standard requires, at a minimum, that the claimant

26   pleads evidentiary facts, such as time, place, persons, statements, and explanations of why

27   the statements are misleading.  <u>See In re GlenFed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1547-48

28   (9th Cir. 1994) (en banc).

United States District Court
For the Northern District of California

1    The Complaint does, with particularity, allege several instances that could plausibly

2    constitute acts of fraud.  Specifically, Plaintiff argues that MERS committed fraud under the

3    UCL by causing Stacy Sandoz, who is neither Vice President as stated nor authorized to act

4    on behalf of MERS in this capacity, to execute the Corporate Assignment.  Compl. ¶¶ 19, 38,

5    43; Compl. Ex. 2.  The Complaint makes identical allegations against Aurora regarding Vice

6    President Michele Rice, as stated on the Substitution of Trustee.  Compl. ¶¶ 26, 45; Compl.

7    Ex. 6.  The Plaintiff similarly maintains that First American's use of the name "Derrick Sue"

8    on the Notice of Default and Election to Sell was fraudulent conduct, owing to the fact that

9    "no such person by that name exists or is employed by First American."  Compl. ¶¶ 22, 40;

10   Compl. Ex. 5.  The Complaint also claims that Cal-Western fraudulently represented Megan

11   Cooper as having the authority to execute the Affidavit of Mailing Substitute Trustee, since

12   no such person exists, is employed by Cal-Western, or signed said document.  Compl. ¶¶ 27,

13   46; Compl. Ex. 6.  Such detailed accounts may very well satisfy the particularity requirement

14   under 9(b) because they appear to allege the who, what, when, and how of the alleged

15   "deceptive business acts."  Compl. ¶ 36.  But see Jensen, 702 F. Supp. 2d at 1189 (granting

16   defendant JP Morgan's motion to dismiss plaintiff borrower's UCL claim for failure "to

17   specify what particular role JP Morgan played in the fraudulent scheme, when and where the

18   scheme occurred, or details of the specific misrepresentations involved").[8]

19       Defendant argues that Plaintiff fails to state that the alleged fraudulent statements

20   "were disseminated to the public [such that] reasonable consumers are likely to be deceived."

21   Mot. at 10 (quoting Sybersound, 517 F.3d at 1151-52).  This argument, while accurate in

22   pointing out Plaintiff's failure to address the distinct features of a fraud-based UCL claim, is

23   questionable considering the fact that all challenged documents were publicly recorded and

24   notarized.  While Plaintiff does not attempt to demonstrate that Defendants have likely

25

26       [8] However, Plaintiff's allegations may not rise to the level of "facial plausibility" required under
     the heightened pleading standards introduced in Iqbal.  Iqbal, 556 U.S. at 663.  While Plaintiff may
27   allege conduct that would constitute fraud if accepted as true, no facts are pled which might allow the
     Court to draw the reasonable inference that the alleged fraud occurred, especially considering the fact
28   that each document challenged was publicly recorded and notarized. To the contrary, Plaintiff's
     allegations, while specific, appear to be more conclusory than factual.

18

**United States District Court**
For the Northern District of California

1  deceived the public under the <u>Sybersound</u> test, recording documents with the county may be

2  sufficient "dissemination to the public."

3  　　　More problematic, however, Plaintiff does not and likely cannot plead actual reliance

4  on the Defendants' alleged fraud.  The Complaint does not indicate that Plaintiff ever

5  believed in the alleged misrepresentations or that they caused her to take any action to her

6  detriment.  As discussed above with regard to UCL standing, Plaintiff fails to plead loss of

7  money or property, let alone a causal correlation of a loss with the Defendants' alleged fraud.

8  　　　To the extent that Plaintiff attempts to state a claim under the "fraudulent" prong of

9  the UCL, the cause of action fails.

10  　　　For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss

11  Plaintiff's UCL claim without prejudice to provide an opportunity to establish standing and

12  more clearly articulate the basis for this cause of action.

13  　　　**C.　　　Third Cause of Action: Quiet Title**

14  　　　Plaintiff seeks to quiet title on the subject property and prays for injunctive relief to

15  enjoin the pending foreclosure sale announced in the Notice of Trustee's Sale.  She

16  predicates her claim on two theories: (1) Defendants are "without any right, title, estate, lien,

17  or interest in the property" and therefore, had no authority to initiate foreclosure proceedings

18  through the Notice of Default and Notice of Trustee's Sale; and (2) the allegedly fraudulent

19  substitution documents disrupted the chain of title.  Compl. ¶¶ 50- 54.[9]

20  　　　Defendants respond by reiterating that as an equitable cause of action, a quiet title

21  claim requires Plaintiff to discharge the Note's debt.  Mot. at 15.  They further contend that

22  Plaintiff has failed to allege all elements of a quiet title claim.

23  　　　**1.　　　Standing**

24  　　　Plaintiff lacks standing to quiet title on the subject property because she has not

25  tendered payment or alleged the ability to tender payment.  "A tender is an offer of

26  ───────────────

27  　　　[9] Plaintiff's Opposition complicates this theory.  She expands her quiet title claim "based on the notion that the subject loans are extinguished because the loans are securitized.  Plaintiff alleges that

28  no debt exists to these Defendants because Defendants are not holders of the notes, and that Defendants have no right to enforce the loans since they cannot prove they comported with the proper chain of title." Opp'n at 8.  These arguments need not be addressed since they did not appear in the Complaint.

United States District Court
For the Northern District of California

1   performance made with the intent to extinguish the obligation." Still v. Plaza Arina

2   Commercial Corp., 21 Cal. App. 3d 378, 385 (1971) (citing Cal. Civ. Code § 1485).  A party

3   "seeking to quiet title in the face of a foreclosure must allege tender or offer of tender of the

4   amount borrowed."  Mangindin v. Wash. Mut. Bank, 637 F. Supp. 2d 700, 712 (N.D. Cal.

5   2009); see also Aguilar v. Bocci, 39 Cal. App. 3d 475, 477 (1974) (a plaintiff cannot "quiet

6   title without discharging his debt.  The cloud upon his title persists until the debt is paid.").

7   This doctrine derives from the maxim: "A party appearing in equity must first do equity."  4

8   Miller & Starr, Cal. Real Estate (3rd ed. 2000) § 10:212, p. 685-686; Karlsen, 15 Cal. App.

9   3d at 117 ("Equity will not interpose its remedial power in the accomplishment of what

10  seemingly would be nothing but an idly and expensively futile act.").  Tender must be (1) in

11  full, (2) unconditional, and (3) made in good faith, and a plaintiff alleging an offer of tender

12  must additionally possess the ability to perform.  Cal. Civ. Code §§ 1493-95.

13          Based on the Complaint presently before the Court, Plaintiff cannot avail herself of

14  the relief she seeks because she has not tendered or offered to tender any amount due under

15  the loan since November 2, 2010.  She therefore remains in default of the loan secured by the

16  Deed of Trust.  At least one court has construed the record's silence on a plaintiff's tender or

17  ability to tender as a concession of inability to do so.  Hamilton, 746 F. Supp. 2d at 1173.

18  Plaintiff's allegation that she is "prepared to tender payment by means of a new loan or loan

19  modification" is insufficient to sustain her claim to quiet title.  Compl. ¶ 56.  First, Plaintiff

20  conditions her offer "upon proof of accounting, after discovery has been propounded . . .

21  should the foreclosure be deemed valid and not void."  Id.  It is therefore not unconditional.

22  Second, Plaintiff's offer does not indicate that she is capable of paying the amount required

23  to reinstate the loan.

24          Plaintiff, citing Onofrio v. Rice, protests that tender is not required for this action

25  because she "attacks the validity of the underlying debt," and tendering payment would

26  "constitute an affirmative of that debt."  Compl. ¶ 52; Onofrio v. Rice, 55 Cal. App. 4th 413,

27  424 (1997) (quoting 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trust &

28  Mortgages, 9:154, pg. 512).  The Complaint, in language and in spirit, does not appear to

**United States District Court**
For the Northern District of California

challenge the validity of the original Deed of Trust.[10]  Plaintiff also fails to explain why the alleged defects in the assignment and foreclosure documents, each recorded after the Deed of Trust, should have the effect of discharging the debt from the original loan the Deed of Trust secured.[11]

Plaintiff further cites <u>Dimock v. Emerald Props LLC</u>, 81 Cal. App. 4th 868 (2000), stating that because the Corporate Assignment document is "both fraudulent and void ab initio . . . any tender rule requirement is not applicable since the deed is void."  Compl. ¶ 42. In <u>Dimock</u>, a defaulting borrower who had not tendered amounts due to reinstate the loan nevertheless succeeded in his quiet title claim to void a deed conveyed after a foreclosure sale.  <u>Dimock</u>, 81 Cal. App. 4th at 878.  The court concluded that the lender's substitution of trustee error resulted in a conveyance by a non-trustee without the power to convey, thus rendering the purchaser's deed void.  Importantly, because the substitution error was apparent from the documents on record, Dimock "was not required to rely on equity" to demonstrate that the deed was void, and therefore, was not obligated to meet the requirements imposed by equity.  <u>Id.</u> at 877 (noting that the apparent validity of a subsequent substitution of trustee created a "conclusive presumption" that the conveying party was not the true trustee).

In citing <u>Dimock</u> as an exception to the tender rule, Plaintiff fails to recognize that the deed nullified by the court was the <u>new</u> deed granted to the purchaser of the subject property at the foreclosure sale, not the <u>original</u> deed of trust.  <u>Id.</u> at 876.  In the absence of a foreclosure sale in the present case, which may have resulted in the conveyance of the deed to a new purchaser, Plaintiff instead challenges the original deed that secured the underlying

---

[10] Plaintiff's Opposition shifts on this issue, stating that she does in fact attack the validity of the underlying debt.  Opp'n at 12, 20.  However, alleging misconduct in connection with the execution of the Deed of Trust undermines Plaintiff's breach of contract claim, which relies on the validity of that deed.

[11] Plaintiff also relies on <u>Onofrio</u> to capitalize on its vague and oft-cited holding that "tender is required unless it would be inequitable to do so."  <u>Onofrio</u>, 55 Cal. App. 4th at 424; Compl. ¶ 52. However, the case is inapposite because its facts are distinguishable.  Specifically, unlike the present case, <u>Onofrio</u> involved a cause of action for rescission and a significant damage award against an "unscrupulous" beneficiary, which offset amounts owed under the loan.  <u>Id.</u> at 420, 424.

21

1   debt.  Thus, <u>Dimock</u> is not analogous.  <u>Dimock</u> is further distinguishable from the present

2   case in that the substitution error alleged here is not apparent; there is no "conclusive

3   presumption" that the Substitution of Trustee is invalid.

4       As a result, the cause of action to quiet title cannot proceed without further action by

5   Plaintiff to satisfy the obligations under the loan.  If Plaintiff chooses to amend her pleading,

6   she must tender amounts sufficient to cure the default or allege an offer (and ability) to

7   tender such payments.

8   **2.**    **Elements**

9       In addition to Plaintiff's lack of standing to pursue a quiet title claim as described

10  above, Plaintiff fails to allege all requisite elements of the cause of action, and therefore,

11  does not adequately state a claim.

12      California law provides that a complaint for quiet title "shall be verified" and shall

13  include the following: (a) a description of the property that is the subject of the action, (b) the

14  title of the plaintiff, (c) the adverse claims to the title of the plaintiff, (d) the date as of which

15  the determination is sought, and (e) a prayer for the determination of the title of the plaintiff

16  against the adverse claims.  Cal. Code Civ. P. § 761.020.

17      Plaintiff fails to allege any claims adverse to her title.  Plaintiff argues in her

18  Opposition that by initiating foreclosure proceedings, Defendants are asserting interests

19  adverse to Plaintiff.  Opp'n at 19.  In <u>Hamilton</u>, a case in which a plaintiff borrower brought

20  a nearly identical quiet title claim against its lender and nominee, a federal district court ruled

21  that defendants held no claim adverse to plaintiff's title because "a deed of trust carries none

22  of the incidents of ownership of the property, other than the right to convey upon default . . .

23  ." <u>Hamilton</u>, 746 F. Supp. 2d at 1177 (quotation omitted).  The same rationale applies here.

24  Until a foreclosure sale actually occurs, this defect in the Complaint cannot be cured.  <u>See</u>

25  <u>Dimock</u>, 81 Cal. App. 4th at 878-79 (entering judgment to quiet title in favor of plaintiff

26  borrower who lost his home in a foreclosure sale to defendant purchaser, implying that

27  allegations pointing to the existence of a purchaser's deed satisfies the "adverse claim"

28  element of a quiet title action).

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1     Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's quiet title

2  cause of action without prejudice.

3     **D.     Fourth Cause of Action: Accounting**

4     As an alternative cause of action should the above claims fail, Plaintiff requests an

5  accounting from the Court.  She alleges that as a result of the Defendants' misconduct, she

6  cannot ascertain the amount due on her loan.  Defendants respond that Plaintiff's confusion

7  does not automatically entitle her to an accounting, and that the Complaint must adequately

8  allege the elements of the cause of action, which it does not.  Defendants are correct.

9     A claim for accounting survives a motion to dismiss only if (1) the relationship

10  between a plaintiff and defendant, such as a fiduciary relationship, calls for an accounting,

11  and (2) the defendant owes a balance to the plaintiff that is too complicated to calculate

12  without an accounting from the Court.  Teselle v. McLoughlin, 173 Cal. App. 4th 156, 179

13  (2009).  An action for accounting is not available if the amount of debt can be made certain

14  by calculation.  Id. (citing St. James Church of Christ Holiness v. Sup. Ct., 135 Cal. App. 2d

15  352 (1955)).

16     As Defendants point out, California Civil Code Section 2943(c)(1) provides that while

17  California law obligates a beneficiary to prepare and deliver a statement responding to a

18  borrower's written demand for information on payments collected and amounts still owed,

19  the obligation ends when a Notice of Trustee's Sale has been recorded.  Cal. Civ Code §§

20  1943(b)(1), (c)(1).  As the Notice of Trustee's Sale was recorded on November 15, 2011,

21  Plaintiff can no longer compel Defendants to produce an accounting.  The Complaint does

22  not allege that Plaintiff made any written request before that point.

23     In addition, Plaintiff cannot satisfy the second element of this claim.  The Complaint

24  does not allege that Defendants owe any money to Plaintiff; instead it makes clear that as a

25  defaulting borrower, Plaintiff remains indebted to Defendants.  Furthermore, the amount of

26  Plaintiff's debt can be made certain, even without calculation.  The Notice of Default, filed

27  by Cal-Western on July 29, 2011, after Plaintiff's last payment had been received, clearly

28  states that Plaintiff owed $24,854.45 in arrears.  Nothing in the Complaint supports a

1   conclusion that this figure would have changed since then.  Thus, ascertaining the amount of

2   money still owed to Defendants does not rise to the level of complexity required for a

3   judicial accounting.

4        Accordingly, the Defendant's motion to dismiss Plaintiff's cause of action for

5   accounting is GRANTED with prejudice.

6        **E.        Fifth Cause of Action: Declaratory Relief**

7        Declaratory relief is not an independent cause of action or theory of recovery, only a

8   remedy.  Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.  Where a substantive cause of

9   action already exists in the complaint, a plaintiff cannot assert a declaratory relief claim as a

10  "superfluous second cause of action for the determination of identical issues."  <u>Jensen</u>, 702 F.

11  Supp. 2d at 1189 (internal quotation marks omitted).  To grant declaratory relief, a district

12  court must find "actual controversy," which is "definite and concrete . . . . real and

13  substantial."  <u>Aetna Life Ins. Co. of Hartford, Conn. v. Haworth</u>, 300 U.S. 227, 240-41

14  (1937).

15       All eight declarations sought by Plaintiff recite, almost verbatim, the prayers

16  embodied in her other causes of actions.  Compl. ¶ 59 (requesting, for example, that the

17  "court (4) render its order quieting title in the Plaintiff. . . . (5) order an accounting as prayed

18  for in the Fourth Cause of Action. . . . [and] (7) issue a Permanent Injunction . . . to prevent

19  the foreclosure sale").  As presently stated, the declaratory relief claim could not resolve any

20  issues beyond those addressed in the first four claims.

21       Moreover, the deficiency of Plaintiff's previous claims suggests the absence of any

22  actual, litigable controversy subject to declaratory relief.  <u>Hamilton</u>, 746 F. Supp. 2d at 1181.

23  To the extent that Plaintiff indirectly requests declaratory relief to determine whether Cal-

24  Western had the authority to initiate foreclosure proceedings, Plaintiff's claim for declaratory

25  relief is dismissed, as recognizing the right to bring such a claim "would fundamentally

26  undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed

27  solely for the purpose of delaying valid foreclosures."  <u>Gomes</u>, 192 Cal. App. 4th at 1155.

28

United States District Court
For the Northern District of California

1    Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's claim for

2    Declaratory Relief with prejudice.

3    **IV.    CONCLUSION**

4    For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss

5    Plaintiff's causes of action for Breach of Contract, violation of California's Unfair

6    Competition Law, and Quiet Title WITHOUT PREJUDICE, and Plaintiff's causes of action

7    for an Accounting and Declaratory Relief WITH PREJUDICE.  Pursuant to Defendants Cal-

8    Western and First American's unopposed Declaration of Non-Monetary Status and

9    Defendant Old Republic's unopposed Disclaimer of Interest, all claims are DISMISSED

10   against them as well.  Plaintiff has twenty (20) days from the date of entry of this order to file

11   an amended complaint.

12   **IT IS SO ORDERED.**

13

14   Dated: June 20, 2012



     _____

15   CHARLES  R. BREYER
     UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

25